---

### BRIDGEWATER.

[The election in this town was controverted on the ground, that the member returned had not estate sufficient to render him eligible as a representative.[2] The committee reported in favor of the election, and their report was agreed to.[3] It decides no principle, which requires to be stated.]

---

### LYNN.

If the proceedings at an election are conducted in a loose and improper manner, and in a way to open a door for fraud and collusion; yet if no fraud or collusion is proved to have been practised, the election will not be void.

The election of William B. Breed, Jonathan Buffum, Joseph Currier, Jacob Ingalls, Francis S. Newhall, Eleazer C. Rich-

[1] 53 J. H. 316.          [2] Same, 82.          [3] Same, 145, 152.

ardson, and Stephen Oliver, members returned from the town of Lynn, was controverted by James Gardner, and others, on the ground of improper conduct on the part of the selectmen, who presided in the meeting, at which the said members were elected.[1]

The facts in the case are stated at length, in the following report[2] of the committee on elections:—

" A meeting of the inhabitants of said town was holden, for the choice of representatives, on the second Monday of November last; and previous to said meeting, the selectmen had caused to be prepared and posted up an alphabetical list of the voters in said town, and gave written notice, which was posted with the list, that a meeting of the selectmen would be holden on Saturday previous to the day of election, from two to four o'clock, P. M., for the purpose of correcting the list. It appeared that two of the selectmen, there being but three in said town, did meet in pursuance of such notice, but no person appeared before the selectmen for the purpose of showing his right to vote, and procuring an insertion of his name on the list. It also appeared, that the two selectmen, the other being sick and unable to attend to his duty, held another meeting on the day of election, from nine to ten o'clock, A. M., for the purpose of receiving evidence of the qualifications of such as claimed a right to vote in the election. This last meeting was duly notified. At this meeting, a number of persons applied, and claimed the right to vote. A hearing was given to such as applied, and a supplemental list was made out, which was not in alphabetical order.

The meeting, on the day of election, was opened at ten o'clock, A. M.; and notice was given, when the meeting was called, that the poll would close at three o'clock, P. M. The voters carried in their ballots for governor, lieutenant-governor, senators, and representatives, on one ticket. The selectmen, when the poll was opened, called upon six or seven persons to check the list, when the voters should give in their votes. Two of the sitting members, namely: Stephen Oliver, and

[1] 53 J. H. 44, 53.  [2] Same, 167.

Francis C. Newhall, were employed for that purpose. It also appeared, that some names were added to the list after the poll was opened, and one by said Oliver, by order of the selectmen, and that such as were added voted in the election.

It further appeared, that one person voted in the election, but not for the sitting members, whose name was not on either of the lists; that two others applied to have their names inserted, and to vote, but were refused the right to vote, solely on the ground, that their names were not on the list, the selectmen assigning, as a reason, that they had but one rule on that subject. It further appeared, that the town clerk, who was not one of the selectmen, sorted some of the votes before the poll was closed; that Jacob Ingalls, one of the selectmen, and one of the sitting members, also counted a part of the votes before the poll was closed, and having given the number to the other selectman, who presided with him at the meeting, threw the votes, so counted by him, under the table. It further appeared, that William B. Breed, another of the sitting members, and not being selectman, was at the ballot box before the poll was closed, handling the votes; and said Breed, and two others, not sitting members, cut and severed the ballots, that did not contain the names of those they called the regular candidates, of the three parties, at the election. It further appeared, that these votes were counted, after they had been severed, and that the persons employed as checkers, and those who lent their aid to cut the ballots, belonged to different parties in the town.

It further appeared, that the selectmen received the ballots from the voters into their hands; and these said selectmen deposited the ballots in the box, and that such had been the usage in that town; that the selectmen found two double ballots, and threw away one of each, without counting those so thrown away, and these were for the sitting members.

It further appeared, that the two selectmen who presided at the meeting counted the votes separately, and gave the number of their respective counts to the town clerk. It did not appear, by the records of the town, that the selectmen had

taken the oath prescribed by law in relation to elections, but it did appear, by the testimony of the town clerk of said town, that they had taken said oath.

A copy of the record of all the votes, given in on the day of election, in said town, accompanies this report.

The committee have given to this case a patient and long hearing, and have endeavored to present the facts that appeared to them material to a just decision. The committee are fully satisfied, that the sitting members received a majority of the votes given in at the election. And, although they cannot but feel sensible that the meeting was conducted in a loose and improper manner, and in a way that has a tendency to open a wide door for fraud and collusion in elections, yet, inasmuch as no fraud or collusion was proved to have been practised in this election, the committee have come unanimously to the conclusion, upon a view of the whole case, that the election of said Breed, Buffum, Currier, Ingalls, Newhall, Oliver and Richardson is valid, and that they are entitled to hold their seats."

The report was agreed to.[1]

[1] 53 J. H. 246.